**MATERN LAW GROUP, PC**
MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
LAUNA ADOLPH (SBN 227743)
ladolph@maternlawgroup.com
2101 E. El Segundo Blvd., Suite 200
El Segundo, CA 90245
Tel: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiffs Elsie Romero,
Ricardo Ibarra, Charity Alicaya, and
Lauren Lindsay

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELSIE ROMERO, individually and on behalf of all others similarly situated, | CASE NO. 2:19-cv-06369-TJH-AGR |
| Plaintiff, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT** |
| vs. | |
| SELECT EMPLOYMENT SERVICES, INC., a Delaware corporation; CALIFORNIA REHABILITATION INSTITUTE, LLC, a Delaware limited liability company; SELECT MEDICAL CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive, | Date:        July 21, 2025
Time:        No appearance necessary, unless the Court notifies the parties
Courtroom:   9C |
| Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 21, 2025, in Courtroom 9C of the United States District Court for the Central District of California, located at 350 W. First Street, Los Angeles, California, plaintiffs Elsie Romero, Ricardo Ibarra, Lauren Lindsay, and Charity Alicaya ("Plaintiffs") will and hereby do move this Court for entry of an order:

1.      Granting preliminarily approval of the proposed class action settlement between Plaintiffs and defendant California Rehabilitation Institute, LLC ("Defendant") set forth in the Stipulation of Class and Representative Action Settlement ("Stipulation"), attached to the Declaration of Matthew J. Matern as Exhibit A;

2.      Approving the proposed Notice of Class and Representative Action Settlement ("Class Notice") and the plan for distribution of the Class Notice to Class Members;

3.      Appointing Phoenix Class Action Administration Solutions as the Settlement Administrator; and

4.      Scheduling a Final Approval Hearing.

This motion is made on the grounds that the proposed settlement is fair, reasonable, and adequate and the Class Notice fairly and adequately informs the Class Members of the terms of the proposed Settlement, their potential awards, their rights and responsibilities, and the consequences of the Settlement.

This motion is based on this notice, the attached memorandum of points and authorities, the Declaration of Matthew J. Matern and all exhibits thereto, including the Stipulation, all documents and records on file in this action, and such additional argument, authorities, evidence and other matters as may be presented by the parties hereafter.  This motion is made following the conference of counsel pursuant to Local Rule 7-3 on June 9, 2025.  Defendant does not oppose this motion.

1    Dated:  June 23, 2025                    **MATERN LAW GROUP, PC**

2

3                                       By:    /s/ Launa Adolph

4                                              MATTHEW J. MATERN
                                               LAUNA ADOPLH

5                                              Attorneys for Plaintiffs and the Class
                                               Members

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO
BLVD., STE 403
EL SEGUNDO, CA 90245

3

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A.    The Parties ...............................................................................2

    B.    Procedural History ...................................................................2

    C.    Discovery And Investigation......................................................4

    D.    Settlement Negotiations ...........................................................5

III.  SUMMARY OF SETTLEMENT ..............................................................5

    A.    The Class .................................................................................5

    B.    Settlement Terms .....................................................................6

        1.    Individual Class Payments ................................................6

        2.    Class Representative Service Awards...................................7

        3.    Attorneys' Fees and Costs .................................................7

        4.    PAGA Payment ...............................................................7

        5.    Settlement Administration Costs .......................................7

    C.    Released Claims .......................................................................7

    D.    Notice And Settlement Administration........................................8

IV.   ARGUMENT .......................................................................................10

    A.    The Settlement Meets The Requirements For Preliminary Approval...10

        1.    Plaintiffs And Their Counsel Have Adequately Represented The Class................................................................................10

        2.    The Settlement Is The Product Of Informed Arm's-Length Negotiations .................................................................11

        3.    The Settlement Provides Adequate Relief For The Class.............12

            a.    Costs, Risks and Delay of Further Litigation........................13

            b.    The Effectiveness of the Proposed Method of Distributing Relief to the Class................................................................14

            c.    The Terms of the Proposed Award of Attorneys' Fees..........14

4.    The Settlement Does Not Provide Preferential Treatment To Plaintiffs Or Any Segment Of The Class ....................................15

B.    The Proposed PAGA Allocation Is Fair And Reasonable....................16

C.    The Proposed Class Notice Is An Appropriate Form Of Giving Notice And Satisfies Due Process..................................................17

V.    CONCLUSION ............................................................18

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO
BLVD., STE 403
EL SEGUNDO, CA 90245

5

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL

# TABLE OF AUTHORITES

**Page(s)**

**Federal Cases**

*Alcala v. Meyer Logistics, Inc.*,
    2019 WL 4452961 (C.D. Cal. June 17, 2019) ....................................................16

*Churchill Vill., L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004)....................................................17

*Deaver v. Compass Bank*,
    2015 WL 4999953 (N.D. Cal. Aug. 21, 2015)....................................................11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)....................................................18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)....................................................10

*Harris v. Vector Marketing Corp.*,
    2011 WL 1627973 (N.D. Cal. April 29, 2011)....................................................16

*Hopson v. Hanesbrands, Inc.*,
    2008 WL 3385452 (S.D. Cal. Apr. 13, 2009)....................................................16

*In re Heritage Bond Litig.*,
    546 F.3d 667 (9th Cir. 2009)....................................................10

*In re M.L. Stern Overtime Litig.*,
    2009 WL 995864 (S.D. Cal. Apr. 13, 2009)....................................................16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)....................................................11

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)....................................................18

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
    688 F.2d 615 (9th Cir. 1982)....................................................10

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)....................................................14, 15, 17

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO
BLVD., STE 403
EL SEGUNDO, CA 90245

6

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ....................................................11

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...........................................................................15

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016) .........................................................................15

*Visceral v. Mistral Grp., Inc.*,
  2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .................................................16

*Zamora Jordan v. Nationstar Mortg., LLC*,
  2019 WL 1966112 (E.D. Wash. May 2, 2019) ...............................................14

**State Cases**

*Thurgood v. Bayshore Transit Management, Inc.*,
  203 Cal. App. 4th 1112 (2012) ........................................................................16

*Iskanian v. CLS Transp. Los Angeles, LLC*,
  59 Cal. 4th 348 (2014) .....................................................................................16

**State Statutes**

Lab. Code § 2699(2) .............................................................................................16

Labor Code section 2699.3 .....................................................................................2

**Federal Rules**

Federal Rule of Civil Procedure 23 ...........................................................10, 12, 17

Federal Rule of Civil Procedure 30(b)(6) ..............................................................4

## I.    INTRODUCTION

Following nearly seven years of litigation, including extensive discovery, four mediation sessions with experienced wage and hour mediators, and an order granting class certification, plaintiffs Elsie Romero ("Romero"), Ricardo Ibarra ("Ibarra"), Lauren Lindsay ("Lindsay"), and Charity Alicaya ("Alicaya") (collectively, "Plaintiffs") seek preliminary approval of a proposed wage-and-hour class and representative action settlement on behalf of all persons employed by defendant California Rehabilitation Institute, LLC ("Defendant") and/or CRI ES, Inc. as non-exempt employees California Rehabilitation Institute ("Cal Rehab") in Los Angeles, California during the relevant time periods.  The Stipulation of Class and Representative Action Settlement ("Stipulation"), which provides for a non-reversionary settlement in the amount of $6,850,000.00, is fair, reasonable, and adequate and should be preliminarily approved.

The settlement amount represents a substantial recovery for the Class Members and Aggrieved Employees based on the claims alleged and the defenses thereto.  Furthermore, the Settlement does not suffer any obvious deficiencies or provide preferential treatment to Plaintiffs or any segment of the class.

Additionally, the proposed notice procedure is appropriate and meets all requirements as to method and form.  The Class Notice will be mailed to Class Members by First Class U.S. Mail at their last known addresses, as updated by the Settlement Administrator.  The Class Notice fairly apprises the Class Members of the terms of the proposed Settlement and of their rights and options in connection with the proceedings.  Thus, the proposed notice procedure is appropriate and meets all requirements as to form and method

Accordingly, Plaintiffs respectfully request the Court enter an order (1) granting preliminary approval of the Settlement; (2) authorizing the mailing of the Class Notice to Class Members; and (3) setting a hearing to consider whether to grant final approval of the Settlement.

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO
BLVD., STE 403
EL SEGUNDO, CA 90245

1

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Parties

Defendant operates Cal Rehab, a physical medicine and rehabilitation hospital in Los Angeles, California.  Declaration of Matthew J. Matern ("Matern Decl.") ¶ 4.  During the Class and PAGA Periods, CRI ES, Inc. provided non-exempt employees to Defendant under a Leased Employee Agreement to staff and operate Cal Rehab.  *Id*. at ¶ 5.

Romero worked for Defendant as a non-exempt Nursing Supervisor in the nursing department from approximately June 2016 to February 2017.  *Id*. at ¶ 7. Ibarra worked for Defendant as a non-exempt Maintenance Mechanic in the plant operations department from approximately December 2017 to September 2018.  *Id*. at ¶ 8.  Lindsay worked for Defendant as a non-exempt Materials Technician in the materials department from approximately November 2016 to December 2018.  *Id*. at ¶ 9.   Alicaya worked for Defendant as a non-exempt Case Management Coordinator in the case management department from approximately June 2018 to March 2019.  *Id*. at ¶ 10.

### B.   Procedural History

On January 25, 2018, Romero provided notice to Defendant, Select Employment Services, Inc. ("Select Employment"), and Select Medical Corporation ("Select Medical") (collectively, "Defendants") and the Labor and Workforce Development Agency ("LWDA") pursuant to Labor Code section 2699.3.  Matern Decl. ¶ 12, Exh. A.  On April 2, 2018, Romero filed  a complaint against Defendants in Los Angeles Superior Court.  Dkt. 1-2, Exh. A.

On March 15, 2019, Ibarra submitted a PAGA notice to Defendants and the LWDA.  Matern Decl. ¶ 13, Exh. B.  On July 2, 2019, plaintiffs filed a First Amended Complaint, which added Ibarra as a plaintiff.  Dkt. 1-2, Exh. B.

On July 23, 2018, Defendant removed this case under the Class Action Fairness Act ("CAFA").  Dkt. 1.  Pursuant to the stipulation of the parties, on

September 25, 2019, the Court entered an order dismissing Select Employment and Select Medical without prejudice.  Dkt. 13.

On December 13, 2019, Lindsay and Alicaya submitted a PAGA notice to Defendant and the LWDA.  Matern Decl. ¶ 14, Exh. C.  On March 10, 2020, Plaintiffs filed the Second Amended Complaint, which added Lindsay and Alicaya as plaintiffs.  Dkt. 52.  The Second Amended Complaint alleges causes of action for: (1) failure to provide meal periods; (2) failure to authorize and permit rest periods; (3) failure to pay minimum wages; (4) failure to pay overtime wages; (5) failure to furnish timely and accurate wage statements; (6) failure to pay all wages upon separation; (7) failure to maintain required records; (8) failure to indemnify employees for necessary expenditures incurred in discharge of duties; (9) unfair and unlawful business practices; and (10) penalties under PAGA.  Dkt. 52.  Defendant filed its answer to the Second Amended Complaint on March 24, 2020.  Dkt. 57.

On August 27, 2021, Plaintiffs filed a motion for class certification.  Dkt. 80. On January 24, 2022, the Court denied the motion for class certification with leave to renew.  Dkt. 89.  On February 23, 2022, Plaintiffs filed their renewed motion for class certification.  Dkt. 90.  On May 23, 2022, the Court granted Plaintiffs' renewed motion for class certification, certifying a class of "[a]ll persons employed by Defendant California Rehabilitation Institute, LLC as non-exempt employees at any time between May 31, 2016, and May 23, 2022," and nine subclasses.  Dkt. 97.

On June 7, 2022, Defendant filed a Petition for Permission to Appeal Pursuant to Rule 23(f).  Matern Decl. ¶ 15.  The Ninth Circuit denied the petition on August 19, 2022.  *Id*.

On November 9, 2023, the third party administrator mailed the class notices to the class members, and the 60-day opt out period ended on January 9, 2023.  *Id*. at ¶ 16.  Two employees opted out of the class.  *Id*.

///

///

### C.   Discovery And Investigation

Prior to filing this Action, Plaintiffs' counsel conducted an extensive investigation including interviewing Romero, reviewing documents provided by Romero and other publicly-available documents, and conducting research regarding the applicable California Labor Code sections and the Industrial Welfare Commission Wage Order.  Matern Decl. ¶ 17.

The Parties also engaged in significant discovery after the complaint was filed.   *Id*. at ¶ 18.   Plaintiffs served, and Defendant responded to, special interrogatories, form interrogatories, requests for production of documents, and requests for admission.   *Id*.  In response to Plaintiffs' requests for production, Defendant produced nearly 5,000 pages of documents, including time and payroll records for 10% of the class members.  *Id*.

Following removal, Plaintiffs filed a motion to compel production of the class list, which Magistrate Judge Alicia G. Rosenberg granted on March 31, 2020.  *Id*. at ¶ 19. Plaintiffs' counsel interviewed dozens of class members and obtained signed declarations from 17 class members who worked in various positions and departments at Cal Rehab.   *Id*. at ¶ 20. Plaintiffs took the depositions of Defendants' three designated witnesses pursuant to Federal Rule of Civil Procedure 30(b)(6) on November 18, December 1, and December 18, 2020.  *Id*. at ¶ 21.

Plaintiffs also responded to Defendant's written discovery requests.  *Id*. at ¶ 22.   Defendant took Romero's deposition on March 20 and May 24, 2019, Lindsay's deposition on December 2, 2020, Alicaya's deposition on December 11, 2020, and Ibarra's deposition on December 22, 2020.  *Id*. at ¶ 23.

Following certification, Plaintiffs served additional discovery requests seeking the contact information and time and payroll records for all class members.  *Id*. at ¶ 24.  Defendant produced the time and payroll records on a rolling basis, with the production completed on October 10, 2023.  *Id*.  Plaintiffs' expert analyzed

the time and payroll records, which assisted Plaintiffs' counsel in preparing a damages analysis in advance of mediation. *Id*. at ¶ 25.

### D. Settlement Negotiations

On August 17, 2021, the Parties attended mediation with experienced wage and hour mediator Steve Mehta, but were unable to reach a settlement. Matern Decl. ¶ 27. On November 1, 2021, the Parties attended a second mediation with experienced wage and hour mediator Steve Serratore, but again were unable to reach a settlement. *Id*. at ¶ 28. Following certification, the Parties again mediated this case with Mr. Serratore on March 13, 2023, but were not able to resolve the Action. *Id*. at ¶ 29.

On March 19, 2025, the Parties attend a fourth mediation with experienced wage and hour mediator Francis Ortman III. *Id*. at ¶ 30. Mr. Ortman made a mediator's proposal, which the Parties accepted, subject to entering into a more comprehensive written settlement agreement. *Id*.

The Parties fully executed the Stipulation on June 18, 2025. *Id*. at ¶ 31, Exh. D. On June 20, 2025, Plaintiffs' counsel submitted the Stipulation to the LWDA. *Id*. at ¶ 32, Exh. E. To date, Plaintiffs' counsel has not received a response from the LWDA. *Id*. at ¶ 33.

## III.   SUMMARY OF SETTLEMENT

### A. The Class

The Class Members consists of all persons employed by California Rehabilitation Institute, LLC and/or CRI ES, Inc. as non-exempt employees at California Rehabilitation Institute in Los Angeles, California at any from May 31, 2016 to May 23, 2022 (the "Class Period").[1] Stipulation ¶¶ 6, 8. The Aggrieved Employees consist of all persons employed by California Rehabilitation Institute, LLC and/or CRI ES, Inc. as non-exempt employees at California Rehabilitation

---

[1] The class definition is not an expansion of the class previously certified by the Court, but instead has been modified to provide greater clarity regarding the employees who fall within the class definition. Matern Decl. ¶ 6.

Institute in Los Angeles, California from January 27, 2017 to March 19, 2025 (the "PAGA Period"). Stipulation ¶¶ 2, 27.

There are approximately 1,335 Class Members who worked approximately 125,930 Workweeks during the Class Period. Matern Decl. ¶ 11.

### B. Settlement Terms

Under the proposed Settlement, the claims of all Class Members and Aggrieved Employees shall be settled for a Gross Settlement Amount of Six Million Eight Hundred Fifty Thousand Dollars ($6,850,000.00), which shall be inclusive of all Individual Class Payments, Attorneys' Fees and Costs, Class Representative Service Awards, Settlement Administration Costs, and the PAGA Payment. Stipulation ¶ 17. The Employer Taxes shall be paid by Defendant in addition to the Gross Settlement Amount. Stipulation ¶ 15. No portion of the Gross Settlement Amount shall revert to Defendant or result in an unpaid residue. Stipulation ¶ 57(a).

The Gross Settlement Amount shall be allocated as follows:

1.    <u>Individual Class Payments</u>.   All Class Members shall be eligible to receive a share of the Net Settlement Amount, which equals the Gross Settlement Amount, less Attorneys' Fees and Costs, the Class Representative Service Awards, Settlement Administration Costs, and the PAGA Payment. Stipulation ¶¶ 22, 57(a). The Net Settlement Amount shall be distributed to Participating Class Members on a pro rata basis according to the total number of Workweeks worked during the Class Periods. Stipulation ¶ 68(a).[2]

---

[2] Individual Class Payment and Individual PAGA Payment checks will remain negotiable for 180 days from the date of issuance. Stipulation ¶ 68(a)(iv). If an Individual Class Payment or Individual PAGA Payment check remains uncashed after 180 days from issuance, the Settlement Administrator shall pay over the amount represented by the check to the State Controller's Office Unclaimed Property Fund, with the identity of the Participating Class Member and/or Aggrieved Employee to whom the funds belong. *Id*.

2.  <u>Class Representative Service Awards</u>.  Subject to Court approval, Plaintiffs Romero, Ibarra, and Lindsay shall each be paid a Class Representative Service Award not to exceed Fifteen Thousand Dollars ($15,000.00) for their time, effort and risk in bringing and presenting the Action and for releasing their Released Claims.  Stipulation ¶ 68(b).[3]

3.  <u>Attorneys' Fees and Costs</u>.  Plaintiffs' counsel shall seek an award of attorneys' fees in an amount not to exceed Two Million Two Hundred Eight Three Thousand Three Hundred Thirty Three Dollars and Thirty Three Cents ($2,283,333.33), which equals thirty-three and one-third percent (33 1/3%) of the Gross Settlement Amount, and reimbursement of reasonable costs in an amount not to exceed Two Hundred Twenty Thousand Dollars ($220,000.00).  Stipulation ¶ 68(c).

4.  <u>PAGA Payment</u>.  Subject to Court approval, Five Hundred Thousand Dollars ($500,000.00) from the Gross Settlement Amount shall be allocated as penalties under PAGA, of which 75%, or Three Hundred Seventy Five Thousand Dollars ($375,000.00), shall be paid by the Settlement Administrator to the LWDA. The remaining 25%, or One Hundred Twenty Five Thousand Dollars ($125,000.00), shall be distributed to Aggrieved Employees as Individual PAGA Payments.  Stipulation ¶ 68(d).

5.  <u>Settlement Administration Costs</u>.  Subject to Court approval, the Settlement Administration Costs, which are estimated not to exceed Twenty Thousand Dollars ($20,000.00), shall be paid from the Gross Settlement Amount. Stipulation ¶ 68(e).

**C.  <u>Released Claims</u>**

Upon Defendant funding the Gross Settlement Amount in full, all Participating Class Members shall be deemed to have released the Released Parties

---

[3] Plaintiff Alicaya was not appointed as a class representative and therefore does not seek a service award.  Matern Decl. ¶ 10.

of any and all claims, demands, rights, liabilities, and/or causes of action that were pleaded or could have been pleaded based upon the factual allegations set forth in the operative complaint and arising at any time during the Class Period, including claims for (1) failure to provide meal periods; (2) failure to authorize and permit rest periods; (3) failure to pay minimum wages; (4) failure to pay overtime wages; (5) failure to pay all wages due to discharged and quitting employees; (6) failure to maintain required records; (7) failure to furnish accurate itemized statements; (8) failure to indemnify employees for necessary expenditures incurred in discharge of duties; and (9) unfair and unlawful business practices. Stipulation ¶ 64. In addition, Upon Defendant funding the Gross Settlement Amount in full, all Aggrieved Employees shall be deemed to have released the Released Parties of any and all claims and/or causes of action under PAGA, which are based upon the factual allegations set forth in the operative complaint and arising at any time during the PAGA Period. *Id.*

The "Released Parties" are Defendant and its present, former, or future parents, subsidiaries, affiliates, divisions, corporations in common control, predecessors, successors and assigns, including but not limited to CRI ES, Inc., Select Medical Corporation, Select Hospital Investors, Inc., Select Employment Services Inc., Regents of the University of California, UCLA Health System, Cedar-Sinai Medical Center, and Kessler Rehabilitation Services, Inc. Stipulation ¶ 34.

### D.    Notice And Settlement Administration

Within fourteen (14) days of entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with each Class Member's full name; last known address; Social Security number; and total number of Workweeks and/or Pay Periods ("Employee Information") for purposes of mailing the Class Notices to Class Members. Stipulation ¶¶ 14, 65(a).

Upon receipt of the Employee Information, the Settlement Administrator shall perform a search based on the National Change of Address Database maintained by the United States Postal Service to update and correct any known or identifiable address changes. Stipulation ¶ 65(b). Within fourteen (14) days after receiving the Employee Information from Defendant, the Settlement Administrator shall mail the Class Notices to all Class Members via regular First Class U.S. Mail. *Id*. The address identified by the Settlement Administrator as the current mailing address shall be presumed to be the most current mailing address for each Class Member. *Id*.

Class Members who wish to exclude themselves from the class settlement must submit a Request for Exclusion. Stipulation ¶ 65(f). The Request for Exclusion must: (1) state the name, address, and telephone number of the Class Member requesting exclusion; (2) contain a statement that the Class Member is requesting to opt out of, or be excluded from, the Settlement; (3) be signed by the Class Member; and (4) be postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address. Stipulation ¶ 65(f).

Class Members who wish to object to the Settlement must submit a Notice of Objection. Stipulation ¶ 56(c). The Notice of Objection must (1) state the full name of the Class Member; (2) state the grounds for the objection; (3) state whether the Class Member intends to appear at the Final Approval Hearing; (4) be signed by the Class Member; and (5) be postmarked by the Response Deadline and returned to the Settlement Administrator at the specified address. Stipulation ¶ 65(g).

If a Class Member disagrees with the number of Workweeks stated on their Class Notice, the Class Member must send a letter to the Settlement Administrator by the Response Deadline stating the reasons why the Class Member disputes the number of Workweeks stated on the Class Notice and provide any supporting documentation. Stipulation ¶ 65(h).

The Class Notice will advise Class Members that they can access the Stipulation and other case-related documents via the Settlement Administrator's website.  Stipulation, Exh. 1, p. 6.

## IV.   ARGUMENT

### A.   The Settlement Meets The Requirements For Preliminary Approval

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. Proc. § 23(e).  Before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009).  Generally, the district court's review of a class action settlement is "extremely limited."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The court considers the settlement as a whole, rather than its components, and lacks authority to "delete, modify or substitute certain provision."  *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir. 1982)).

To approve a settlement that would bind class members, the court must consider whether: (A) "the class representatives and class counsel have adequately represented the class;" (B) "the proposal was negotiated at arm's length;" (C) "the relief provided for the class is adequate;" and (D) "the proposal treats class members equitably relative to each other."  Fed R. Civ. P. 23(e)(2).  As each of these factors is met here, preliminary approval is appropriate.

### 1.   Plaintiffs And Their Counsel Have Adequately Represented The Class

The Ninth Circuit applies a two-pronged test to determine whether the representative parties will adequately represent the class: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members;

and (2) have the named plaintiffs and their counsel prosecuted the action vigorously on behalf of the class." *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000).

Plaintiffs have no conflicts of interest with other Class Members. Plaintiffs' interests are aligned with those of the Class Members, as they seek payment for unpaid wages on behalf of the Class Members. Matern Decl. ¶ 52. Plaintiffs' counsel also does not have any conflict of interest with the Class Members. *Id.* at ¶ 53.

Additionally, Plaintiffs and their counsel have demonstrated that they will vigorously represent the Class Members. Matern Decl. ¶ 54. Plaintiffs' counsel have extensive experience prosecuting wage-and-hour class cases, and have previously been appointed class counsel in numerous wage-and-hour class actions. Matern Decl. ¶¶ 42-51. Indeed, this Court previously found that Romero, Ibarra, and Lindsay and their counsel are adequate and appointed them to represent the class. Dkt. 89, p. 7; Dkt. 97, p. 5. Accordingly, the adequacy requirement is satisfied.

## 2. The Settlement Is The Product Of Informed Arm's-Length Negotiations

The use of an experienced mediator supports a finding that settlement negotiations were both informed and non-collusive. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007); *Deaver v. Compass Bank*, 2015 WL 4999953, *7 (N.D. Cal. Aug. 21, 2015). Here, the Settlement was reached after extensive negotiations with the assistance of experienced wage and hour mediators over the course of four mediations.

The Parties attended mediation with Mr. Mehta on August 17, 2021, but were unable to reach a settlement. Matern Decl. ¶ 27. The Parties subsequently attended a second mediation on November 1, 2021, with Mr. Serratore but again were unable to reach a settlement. *Id.* at ¶ 28. Following certification, the Parties again

mediated this case with Mr. Serratore on March 13, 2023, but were not able to resolve the Action. *Id*. at ¶ 29. The Parties attend a fourth mediation with experienced Mr. Ortman on March 19, 2025. *Id*. at ¶ 30. Mr. Ortman made a mediator's proposal, which the Parties accepted. *Id*.

These circumstances are the antithesis of collusion and show that the settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. The Parties went into each mediation willing to explore the potential for a settlement, but were prepared to litigate their positions through trial and appeal if a settlement had not been reached. *Id*. at ¶ 34.

Plaintiffs and their counsel were able to make an informed decision regarding settlement, as Plaintiffs conducted significant discovery and investigation, including propounding multiple sets of written discovery, reviewing documents produced by Defendant, interviewing Class Members and obtaining 17 signed declarations, and taking the depositions of Defendant's corporate witnesses. *Id*. at ¶¶ 18-24. Plaintiffs also prepared a damages model prior to each of the mediations which was based on information and data obtained from Defendants and Class Members. *Id*. at ¶ 25. Based on the information and record developed through extensive investigation and discovery, Plaintiffs' counsel was able to act intelligently and effectively in negotiating the proposed Settlement. *Id*. at ¶ 26.

### 3.    The Settlement Provides Adequate Relief For The Class

The third factor considers whether the relief provided to the class is adequate, taking into account: "(i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[4] Fed. R. Civ. P. 23(e)(2). Under the

---

[4] There are no separate agreements the Court needs to consider to approve the proposed settlement. Stipulation ¶ 74.

terms of the Settlement, Defendant will pay $6,8500,000.00 to resolve the Action. The settlement amount is approximately 19.5% of the *maximum* potential damages allegedly owed to Class Members and Aggrieved Employees. *See* Matern Decl. ¶ 36.[5] This is a substantial recovery which takes into consideration the significant risks of proceeding with the litigation.

a.    <u>Costs, Risks and Delay of Further Litigation</u>

In reaching a decision to settle this case, Plaintiffs and their counsel considered the risks of proceeding with the litigation. These risks include: (i) the risk that the Court will deny certification as to some or all of the claims, (ii) the burdens of proof necessary to establish liability, (iii) the merits of the defenses raised by Defendant, (iv) the difficulties in establishing damages, (iv) the likelihood of success at trial, and (v) the probability of appeal in the event of a favorable judgment. Matern Decl. ¶ 35. Plaintiffs also considered the recommendation of the mediator who is experienced in handling complex wage-and-hour matters. *Id*.

Continued litigation would be expensive, involving a lengthy trial, and would substantially delay and reduce any recovery by the Class Members. *Id*. at ¶ 38. While Plaintiffs are confident in the merits of their claims, a legitimate controversy exists as to each cause of action. *Id*. at ¶ 37. Plaintiffs also recognize that, given the nature and scope of the claims, establishing liability and proving the amount of wages due to each Class Member would be an expensive, time-consuming, and uncertain proposition. *Id*. at ¶ 39. In the event Plaintiffs obtained a favorable judgment, an appeal was likely. *Id*. at ¶ 38.

In contrast, because of the Settlement, Class Members will timely receive relief and avoid the risk of an unfavorable judgment. Based on an estimated Net

---

[5] As set forth in Paragraph 36 of the Matern Declaration, the maximum potential damages are $35,109,964.10, including $35,109,964.10, including $13,948,825.30 in unpaid compensation and $21,161,138.80 in penalties.

Settlement Amount of $3,781,666.67, each Class Member, on average, will receive $2,832.71, exclusive of any Individual PAGA Payment. *Id*. at ¶ 40.

The fact that the Settlement will eliminate delay and further expense weighs strongly in favor of approval. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). Where, as here, the parties face significant uncertainty, the attendant risks also favor settlement. *Hanlon*, 150 F.3d at 1026.

>  b. The Effectiveness of the Proposed Method of Distributing Relief to the Class

The Stipulation provides a straightforward process for distributing the Net Settlement Amount to Class Members. Class Members are not required to submit a claim to receive a share of the Net Settlement Amount; rather, all Class Members who do not opt out will automatically receive a payment. Stipulation ¶ 68(a). Individual Class Payments will be distributed on a pro rata basis based on the number of Workweeks. *Id*.

Settlement checks will be negotiable for 180 calendar days from the date of mailing. Stipulation ¶ 68(a)(iv). After 180 days, the Settlement Administrator will distribute the value of any uncashed checks to the State Controller's Office Unclaimed Property Fund in the name of the Participating Class Member, which will allow Participating Class Members to collect their respective Individual Class Payment at any time in the future. *Id*. Thus, the proposed method of distribution "equitably and effectively distribute[s] relief to the Class." *See Zamora Jordan v. Nationstar Mortg., LLC*, 2019 WL 1966112, *4 (E.D. Wash. May 2, 2019).

>  c. The Terms of the Proposed Award of Attorneys' Fees

Pursuant to the Stipulation, Plaintiffs' counsel shall seek an award of attorneys' fees in an amount not to exceed $2,283,333.33, which equals one-third (1/3) of the Gross Settlement Amount, plus reimbursement of litigation costs incurred not to exceed $220,000.00. Stipulation ¶ 68(c). To calculate the fee in a common-fund case, the district court "has discretion to apply either the lodestar

method or the percentage-of-the-fund method in calculating a fee award." *Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016). Since this motion does not ask the Court to award attorneys' fees, and the Settlement provides that attorneys' fees are "not to exceed one-third (1/3) of the Gross Settlement Amount," the terms are acceptable for purposes of preliminary approval. The ultimate determination of attorneys' fees will be properly addressed at the final approval stage, subject to the filing of a separate motion for attorneys' fees. Pursuant to the Stipulation, attorneys' fees will be distributed at the same time as payments to Class Members. Stipulation ¶ 68(c).

### 4. The Settlement Does Not Provide Preferential Treatment To Plaintiffs Or Any Segment Of The Class

Under the fourth factor, the Court examines whether the proposed settlement provides preferential treatment to any class member. Here, the proposed Settlement poses no risk of unequal treatment of any Class Member, as each Participating Class Member's Individual Class Payment will be calculated based upon his or her Workweeks. Stipulation ¶ 68(a)(i).

The Settlement provides for Class Representative Service Awards to Plaintiffs up to $15,000.00 each. Stipulation ¶ 68(b). These modest payments, which together represent just 0.65% of the Gross Settlement Amount, are appropriate given the substantial risk assumed and the services undertaken by Plaintiffs over the last **seven years** in pursuing claims against their former employer and in exchange for them agreeing to a general release of claims arising from or related to their employment with Defendant.

The Ninth Circuit has recognized that service awards to named plaintiffs in class actions are permissible. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *see also Rodriguez*, 563 F.3d at 958-69 (finding that the payment of a service award is "fairly typical in class actions"). Furthermore, the Court will ultimately determine whether Plaintiffs are entitled to the requested service awards

at the Final Approval Hearing, after Plaintiffs submit declarations outlining the efforts expended and risks taken on behalf of the Class Members. *See Harris v. Vector Marketing Corp.*, 2011 WL 1627973 at \*9 (N.D. Cal. April 29, 2011). Thus, the absence of any preferential treatment supports preliminary approval.

## B.    The Proposed PAGA Allocation Is Fair And Reasonable

The settlement amount allocated for penalties under PAGA is fair and reasonable. As a preliminary matter, courts have discretion to greatly reduce the amount awarded under PAGA. Lab. Code § 2699(2); *Thurgood v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1135 (2012). This is particularly true where a plaintiff alleges both class claims and a representative action for civil penalties. *Visceral v. Mistral Grp., Inc.*, 2016 WL 5907869, \*9 (N.D. Cal. Oct. 11, 2016). PAGA was initiated to ensure compliance with the Labor Code in light of the government's limited enforcement resources. *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 379 (2014). Where, as here, the parties reach a substantial settlement providing employees with monetary compensation for underlying Labor Code violations, many of PAGA's underlying policy objectives are satisfied. Accordingly, there exists a substantial likelihood that the Court would exercise its discretion and reduce the amount awarded for PAGA penalties even if Plaintiffs proved successful at trial. Additionally, PAGA's shorter statute of limitations justifies a limited allocation when compared to the amount allocated for Labor Code violations.

Here, the $500,000.00 PAGA allocation is well within the range approved by California courts and therefore should be approved. *See Alcala v. Meyer Logistics, Inc.*, 2019 WL 4452961, \*9 (C.D. Cal. June 17, 2019) (finding that settlement of claims for PAGA penalties representing 1.25 percent of gross settlement amount was reasonable, as it "falls within the zero to two percent range for PAGA claims approved by courts."); *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, \*1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of two percent); *Hopson v.*

*Hanesbrands, Inc.*, 2008 WL 3385452, *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 0.3 percent).

## C.  <u>The Proposed Class Notice Is An Appropriate Form Of Giving Notice And Satisfies Due Process</u>

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  In the Ninth Circuit, notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).

The Class Notice is written in plain, concise language that includes: (1) basic information about the Action and the Settlement; (2) the class definition; (3) a description of the claims in the Action; (4) an explanation of how Class Members can obtain benefits under the Settlement; (5) an explanation of how Class Members can exercise their right to request exclusion from or object to the Settlement; (6) information regarding the scope of the Released Claims and the binding effect of the Settlement; (7) the date and time of the Final Approval Hearing; and (8) contact information to obtain additional information.  *See* Stipulation, Ex. 1. The Class Notice provides Class Members with sufficient information to make an informed and intelligent decision about the settlement.  Accordingly, it satisfies the content requirements of Rule 23(e) and satisfies all due process requirements.  *See Rodriguez*, 563 F.3d at 963 (where class notice communicated the essentials of the proposed settlement in a sufficiently balanced, accurate, and informative way, it satisfied due process concerns).

Prior to mailing the Class Notices to Class Members, the Settlement Administrator will perform a search of the Class Members' addresses using the United States Postal Service's National Change of Address Database in order to update and correct any known or identifiable address changes.  Stipulation ¶ 65(b). Direct mail notice to Class Members' last known addresses is the best notice

possible under the circumstances. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-76 (1974).

In sum, the contents and plan for dissemination of the Class Notice satisfy the requirements of Rule 23(e) and due process.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement, approve the content and plan for distribution of the Class Notice, and schedule a Final Approval Hearing.

Dated:  June 23, 2025                    **MATERN LAW GROUP, PC**

By:    /s/ Launa Adolph
       MATTHEW J. MATERN
       LAUNA ADOLPH
       Attorneys for Plaintiffs and the Class
       Members

MATERN LAW GROUP, PC
2101 E. EL SEGUNDO
BLVD., STE 403
EL SEGUNDO, CA 90245

18

PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL