# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| ELSIE ROMERO, *et al.*, | CV 19-06369 TJH (AGR) |
| Plaintiff, | |
| v. | |
| CALIFORNIA REHABILITATION INSTITUTE, L.L.C., | Order |
| Defendant. | |

The Court has considered the unopposed motion for preliminary approval of the class action settlement filed by named class representatives Elsie Romero, Ricardo Ibarra and Lauren Lindsay [collectively, "the Class Representatives"] [dkt. # 122], together with the moving papers.

On March 10, 2020, Plaintiffs Romero, Ibarra, Lindsay, and Charity Alicaya filed their Second Amended Complaint ["SAC"] in this putative class action against Defendant California Rehabilitation Institute, L.L.C. ["Cal Rehab"] for California Labor Code violations. Specifically, they alleged claims for: (1) Failure to provide meal periods; (2) Failure to authorize and permit rest periods; (3) Failure to pay minimum wages; (4) Failure to pay overtime wages; (5) Failure to furnish timely and accurate wage

statements; (6) Failure to pay all wages upon separation; (7) Failure to maintain required records; (8) Failure to indemnify employees for necessary expenditures incurred in discharge of duties; (9) Unfair and unlawful business practices; and (10) Penalties under California's Private Attorney General Act, Cal. Lab. Code § 2698 , *et seq.*["PAGA"].

Romero, Ibarra, Lindsay, and Alicaya are former, non-exempt employees of Cal Rehab. Romero was a nursing supervisor from June, 2016, to February, 2017. Ibarra was a maintenance mechanic from December, 2017, to September, 2018. Lindsay was a materials technician from November, 2016, to December, 2018, and, then, a materials manager from December, 2018, to June, 2019. Alicaya was a case manager from June, 2018, to March, 2019.

On May 23, 2022, the Court certified a class of all non-exempt, Cal Rehab employees who worked at Cal Rehab at any time between May 31, 2016, and May 23, 2022. The Court, also, certified nine subclasses: (1) Subclass 1 – all non-exempt employees who were required to carry a communication device and be available during their meal breaks; (2) Subclass 2 – all non-exempt employees who were required to carry a communication device and be available during their rest breaks; (3) Subclass 3 – all non-exempt employees who worked a shift of 3.5 hours or more and received no rest breaks, worked a shift of more than six hours and received fewer than two rest breaks, or worked a shift of more than 10 hours and received fewer than three paid rest breaks; (4) Subclass 4 – all non-exempt employees who worked a shift over 12 hours for which time records do not show a second 30-minute meal period; (5) Subclass 5 – all non-exempt employees who received at least one meal or rest break premium; (6) Subclass 6 – all non-exempt employees who worked an overnight shift followed by a shift that began the same calendar day and were not paid overtime for all time worked in excess of eight hours in a 24-hour period, or, if they worked an alternative workweek schedule, in excess of 12 hours in a 24-hour period; (7) Subclass 7 – all non-exempt employees who used their personal cell phones for work purposes and were not compensated for that expense; (8) Subclass 8 – all non-exempt employees who dry

cleaned or separately laundered their uniforms and were not compensated for those expenses; and (9) Subclass 9 – all non-exempt employees who received a wage statement from Cal Rehab.

Additionally, the Court appointed Romero as class representative for Subclasses 1, 2, 3, 4, 5, 6, 7, 8, and 9; Ibarra as class representative for Subclasses 1, 2, 3, and 9; and Lindsay as class representative for Subclasses 1, 2, 3, 7, and 9. Alicaya was not appointed as a class representative.

On June 23, 2023, after multiple rounds of mediation, the parties informed the Court that they had reached a settlement.

The Class Representatives, now, move for preliminary approval of the class action settlement.

**Approval of Proposed Class Action Settlement**

A class action may be settled only with the Court's approval. Fed. R. Civ. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's role, here, is to determine "whether the proposed settlement, taken as a whole, is fair, adequate, and reasonable." *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

**Proposed Settlement**

The putative class consists of approximately 1,335 members who worked approximately 125,930 workweeks at Cal Rehab between May 31, 2016, and May 23, 2022.

The gross amount of the proposed settlement is $6,850,000.00, less deductions for: (1) Incentive service awards of up to $15,000.00 for each Class Representative; (2) Attorneys' fees up to exceed $2,283,333.33 – based on 33.3% of the proposed gross settlement amount; (3) Reasonable litigation costs up to $220,000.00; (4) A

PAGA payment of $500,000.00 – with $375,000.00 (75%) payable to the California Labor & Workforce Development Agency, and $125,000.00 (25%) to aggrieved; and (5) Settlement administration costs, estimated to be up to $20,000.00. After the proposed deductions, the net settlement amount will be $3,781,666.67. Each class member will receive, on average, $2,832.71, exclusive of individual PAGA payments and assuming that no class member opts out of the class action.

**Reasonableness of the Gross Settlement Amount**

Preliminarily, the Court must determine whether the settlement amount was "the product of an arms-length, non-collusive, negotiated resolution[.]" *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The Court may consider the following factors: (1) The settlement amount; (2) The strength of the putative class's case; (3) The risk of maintaining class action status throughout the trial; (4) The risk, expense, complexity, and likely duration of further litigation; (5) The extent of discovery and the overall stage of the case; (6) The experience and views of counsel; (7) The presence of a governmental participant; and (8) The reaction of the class members to the proposed settlement. *See Rodriguez*, 563 F.3d at 965-67.

The Class Representatives, here, calculated the class's maximum potential recovery for Cal Rehab's alleged failure to provide meal and rest breaks, to pay meal and rest break premiums, to pay wages for all hours worked, to reimburse business expenses, and to provide accurate wage statements, exclusive of interest, to be approximately $35,109,964.10, based on $13,948,825.30 for unpaid compensation, and $21,161,138.80 for PAGA penalties. The proposed gross settlement of $6,850,000.00 is approximately 19.5% of the maximum potential damages. While the proposed settlement amount represents a significant discount from the maximum potential recovery, it is "the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Rodriguez*, 563 F.3d at 964.

Consequently, the Court finds that the proposed settlement was, indeed, "the product of an arms-length, non-collusive, negotiated resolution[.]" *See Rodriguez,* 563 F.3d at 965.

**Reasonableness of the PAGA Settlement**

An employee may pursue, on behalf of the State of California, a PAGA claim to obtain civil penalties from his employer for violations of California's labor laws. Cal. Lab. Code § 2699(a). PAGA settlements are shared between the aggrieved employees and the State of California. Currently, based on the 2024 amendment to PAGA, aggrieved employees are entitled to receive 35% of the civil penalties recovered, and the California Labor & Workforce Development Agency is entitled to receive 65% of the civil penalties recovered. Cal. Lab. Code § 2699(m)-(n). However, for PAGA claims filed before June 19, 2024, including the PAGA claim in this case, aggrieved employees are entitled to receive only 25% of the civil penalties recovered, and the California Labor & Workforce Development Agency is entitled to receive 75% of the civil penalties recovered. Cal. Lab. Code § 2699(i). Here, the aggrieved employees should receive 25%, and the California Labor & Workforce Development Agency should receive 75%, of the total proposed PAGA settlement. Cal. Lab. Code § 2699(i) (2016).

PAGA settlements are subject to Court approval. Cal. Lab. Code § 2699 (s)(1)(2). For PAGA claims filed before June 19, 2024, PAGA penalties are calculated based on $100.00 per pay period for each aggrieved employee for an employer's initial Labor Code violation, and $200.00 per pay period for each aggrieved employee for each an employer's subsequent violations. Cal. Lab. Code § 2699(f)(2). However, the Court may reduce those penalties if it deems the statutory penalties to be "unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2).

When evaluating a proposed PAGA settlement, the Court must consider whether it is fair, reasonable, and adequate with reference to PAGA's purposes of remediating

present labor law violations, deterring future violations, and maximizing the enforcement of California's labor laws. *Moniz v. Adecco USA, Inc.,* 72 Cal. App. 5th 56, 77 (2021). When a PAGA claim is settled with other Labor Code claims, District Courts routinely consider the total settlement amount to determine whether PAGA's purposes have been met. *See, e.g.*, *O'Connor v. Uber Technologies, Inc.,* 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). Further, if the monetary settlement for the other Labor Code claims provides substantial relief to the class, District Courts routinely, and significantly, reduce the PAGA penalties. *See, e.g.*, *O'Connor,* 201 F. Supp. 3d at 1134-35.

Here, the Class Representatives calculated Cal Rehab's maximum potential PAGA penalty to be $21,161,138.80, which is based on the assumption that Cal Rehab will be held liable for all alleged Labor Code violations. However, Cal Rehab could prevail at trial. Further, the California Labor & Workforce Development Agency has not filed an opposition to the proposed $500,000.00 PAGA settlement. Finally, the proposed $6,350,000.00 gross settlement amount for the remaining Labor Code claims supports a significant reduction of the base PAGA penalty. Consequently, the Court finds that the proposed $500,000.00 PAGA settlement, here, to be fair, reasonable and adequate. *See O'Connor*, 201 F. Supp. 3d at 1135.

**Proposed Distribution Method**

The Class Representatives proposed a *pro rata* distribution of the net settlement amount based on the number of workweeks worked by each class member during the class period, with any amount of time worked in a week counted as a full workweek. However, it would not be fair to full-time employees if a part-time employee were to receive the same settlement allocation for working significantly less than full-time during any applicable workweek. Indeed, it would be a windfall to the part-time employees at the expense of the full-time employees. Here, the Class Representatives failed to explain why the net settlement amount could not be distributed based on

subclasses, hours or shifts actually worked, and hourly wages. The putative class, here, is relatively small, making it seemingly feasible to use Cal Rehab's records to calculate the fairest distribution. Consequently, the Class Representatives failed to establish that the proposed distribution method is fair, adequate, and reasonable to all participating class members.

**Class Representatives' Incentive Awards**

The Class Representatives seek an incentive award of up to $15,000.00 for each of the three class representatives.

Incentive awards must be reasonable. *See Staton v. Boeing Co.*, 327 F.3d, 938, 976-77 (9th Cir. 2003). Here, the Class Representatives' request is based on, *inter alia*, their time, effort and risk in bringing and presenting the action and for releasing their released claims against Cal Rehab. While those types of activities, generally, justify an incentive award, *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009), the Class Representatives, here, failed to provide a factual basis to justify the requested incentive awards. While the Class Representatives stated that they would provide a declaration to substantiate their requested incentive awards when they move for final approval of the proposed settlement, the Court is obligated to determine, now, whether all aspects of the proposed settlement, taken as a whole, are fair, adequate, and reasonable. *See Class Plaintiffs*, 955 F.2d at 1276.

Based on the information, now, before the Court, the Class Representatives failed to show that the proposed service award is fair, adequate, and reasonable.

**Attorneys' Fees**

The Class Representatives seek attorneys' fees of up to $2,283,333.33, which is approximately 33.3% of the gross settlement amount. However, the Class Representatives failed to show the existence of special circumstances that would justify an upward departure from the Ninth Circuit's 25% benchmark for class action

contingency awards. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989); Fed. R. Civ. P. 23(e)(2)(C)(iii). The Class Representatives stated that they will submit information regarding the amount and nature of the work performed by their attorneys when they move for final approval. However, the Court is obligated to determine, now, whether all aspects of the proposed settlement, taken as a whole, are fair, adequate, and reasonable. *See Class Plaintiffs*, 955 F.2d at 1276. Consequently, the Class Representatives failed to establish that their proposed amount for attorneys' fees is fair, adequate, and reasonable. Moreover, based on the record, here, the Ninth Circuit's 25% benchmark appears to be fair, adequate, and reasonable.

**Litigation Costs**

The Class Representatives seek litigation costs of up to $220,000.00, separate from the settlement administration costs. However, the Class Representatives failed to provide a cost report and supporting invoices for any of their litigation costs. The Class Representatives stated that they will submit additional information regarding their litigation costs when they move for final approval of the proposed settlement. Nevertheless, the Court is obligated to determine, now, whether all aspects of the proposed settlement, taken as a whole, are fair, adequate, and reasonable. *See Class Plaintiffs*, 955 F.2d at 1276.

Based on the information, now, before the Court, the Class Representatives failed to show that the proposed litigation costs are fair, adequate, and reasonable.

**Settlement Administration Costs**

The Class Representatives seek settlement administration costs, of up to $20,000.00. Again, the Class Representatives failed to provide an invoice or other documentation detailing the work that will be performed by the third party claims administrator, and the cost of that work.

Based on the information, now, before the Court, the Class Representatives failed

to show that the proposed settlement administration costs are fair, adequate, and reasonable.

Accordingly,

𝔍𝔱 𝔦𝔰 𝔒𝔯𝔡𝔢𝔯𝔢𝔡 that the motion for preliminary approval of the class settlement be, and hereby is, 𝔇𝔢𝔫𝔦𝔢𝔡 with leave to renew.

Date: October 31, 2025

_____
𝔗𝔢𝔯𝔯𝔶 𝔍. 𝔥𝔞𝔱𝔱𝔢𝔯, 𝔍𝔯.
𝔖𝔢𝔫𝔦𝔬𝔯 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔍𝔲𝔡𝔤𝔢